**WIEMAN–SLECHTA CO., a Nebraska corporation, Plaintiff,**

v.

**PASCOE STEEL CORPORATION, a Georgia corporation, Defendant.**

**Civ. No. 4710.**

United States District Court, D. North Dakota, Northeastern Division.

Dec. 13, 1972.

Theodore M. Camrud, of Degnan, McElroy, Lamb, Camrud & Maddock, Ltd., Grand Forks, N. D., and James F. Kasher, of Brady, Kasher & McDonnell, Omaha, Neb., for plaintiff.

Paul G. Woutat, of Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, N. D., for defendant.

## MEMORANDUM OPINION

DAVIES, Senior District Judge.

On April 1, 1970, Morrison-Knudsen Company and Associates (Morrison-Knudsen) entered into a contract with the United States for construction of a Safeguard Ballistic Missile Defense System Facility near Grand Forks, North Dakota. In need of a number of temporary steel buildings to be located at various missile sites, Morrison-Knudsen contacted several steel fabricators, including the defendant, Pascoe Steel Corporation (Pascoe), Columbus, Georgia, seeking bids for the fabrication and erection of the buildings.

Desirous of bidding, but not having a steel erection crew available, Pascoe's District Sales Manager contacted the plaintiff, Wieman-Slechta Co. (Wieman-Slechta), one of its franchised dealers located in Omaha, Nebraska, to inquire if they would be interested in joining Pascoe in submitting a bid. Wieman-Slechta initially declined, but later agreed to meet with Pascoe in Grand Forks to confer with representatives of Morrison-Knudsen concerning a possible bid.

Present at the first meeting on Thursday evening, April 9, 1970,[1] were John McCarthy, Pascoe's Regional Sales Manager; William Wieman and Everett Slechta of Wieman-Slechta; and Larry Swanson, one of Morrison-Knudsen's General Superintendents. Discussed during this and subsequent meetings held the next day were the general requirements and specifications for the steel buildings, the number needed, a tentative completion date for the second or third week of June, 1970, the potential labor market for steelworkers, availability of Morrison-Knudsen equipment to be used by Wieman-Slechta, and the method to be utilized by Pascoe in shipping component parts of the buildings.

On Friday, April 10th, Mr. Wieman and Mr. Slechta spent most of their

1. At the time of trial the participants were unable to recall specific dates, but agreed that this meeting took place the week preceding the signing of the Wieman-Slechta—Morrison-Knudsen contract on April 14, 1970.

time assembling prices for labor and materials needed, while Mr. McCarthy contacted his home office as to the availability of the buildings, their cost and delivery dates. The three conferred at various times concerning the proposed bid, delivery dates and the time needed for completion if their bid was accepted by Morrison-Knudsen. Mr. Wieman and Mr. Slechta were concerned that if the buildings were not completed by the time Morrison-Knudsen commenced hiring steelworkers, a labor shortage would develop and excessive costs incurred. Also discussed were the load restrictions imposed by the North Dakota Highway Department when roads in the area began to thaw. Mr. McCarthy assured them that the buildings would be available and that their component parts would be delivered in time to be erected by the completion date set by Morrison-Knudsen.

Friday evening Mr. Wieman, Mr. Slechta and Mr. McCarthy again met with representatives of Morrison-Knudsen to submit a joint bid in the name of Wieman-Slechta covering the supplying and erection of the buildings. Just prior to submitting the bid Mr. Wieman again inquired of Mr. McCarthy whether the delivery of the steel buildings could be assured for six weeks prior to whatever completion date was set by Morrison-Knudsen and he was again told that the buildings could be delivered whenever needed since they were mainly standard and readily available. Mr. McCarthy then submitted the bid to the Morrison-Knudsen representatives who rejected it as being $2,000 higher than that of several other steel fabricators. The matter was discussed and, while Morrison-Knudsen preferred the Pascoe buildings, the total cost for the buildings and their erection could not exceed that of the other bidders. It was then determined that if Pascoe were to sell the buildings direct to Morrison-Knudsen on a cash basis, a discount of one-half of one per cent—10 days—net 30 days—could be allowed. This would reduce Wieman-Slechta's bonding costs and bring the

overall cost to Morrison-Knudsen in line with the other bids submitted. This arrangement was acceptable.

Final completion date was set for June 15, 1970, a requirement that Morrison-Knudsen insisted be met since that date would also be their start-up date and the buildings would be needed. Mr. McCarthy assured all concerned that the component parts of the buildings to be erected first would be on the sites the first week of May. Wieman-Slechta was promised the use of Morrison-Knudsen cranes and other equipment at no cost until needed by Morrison-Knudsen about June 15th. It was then agreed that the component parts of the buildings were to be shipped via trailers on railroad flat cars (TOFC). The meeting concluded with the understanding that Pascoe would furnish the component parts for 14 buildings pursuant to a Morrison-Knudsen purchase order and that a separate contract would be prepared covering Wieman-Slechta's providing concrete foundations and slabs for the buildings and their erection. Before leaving Grand Forks Mr. Wieman, Mr. Slechta and Mr. McCarthy again discussed difficulties that would arise if the component parts of the buildings did not arrive at the sites on time and Mr. McCarthy again promised that the component parts would begin arriving the first week of May.

Mr. Slechta returned to Grand Forks the following Monday and entered into a contract with Morrison-Knudsen, April 14th, on behalf of Wieman-Slechta. This contract provided, in part, that:

"1. Contractor will be Owner's agent for and will be charged with the total responsibility for ordering and assuring delivery of all materials required hereunder and in that connection Contractor acknowledges Owner's purchase order with Pascoe Steel Corporation for buildings and will closely coordinate its efforts with the shipping schedule of Pascoe Steel Corporation and the schedule of the Owner's original contract

realizing that time is of the essence of the original contract and of this contract.

\* \* \* \* \* \*

"7. All buildings covered hereunder are to be completed and accepted by the Owner not later than June 15 1970, and Contractor agrees to make every effort to complete all of the said buildings in advance of such date."

Wieman-Slechta began preparing and pouring the concrete foundations about the 27th of April and the first four foundations were ready on or about May 4th for erection of the first buildings with all 14 foundations and slabs being completed by the end of May.

Upon Mr. McCarthy's return to Columbus, Georgia, he submitted a memo to the Pascoe Distribution Division, dated April 20, 1970, concerning the sale of the buildings to Morrison-Knudsen which contained, as far as pertinent, the following:

"During the negotiations for these buildings, several items were discussed that I believe we all should be aware of to avoid any difficulties as the project progresses.

"1. Buildings were sold directly to Morrison and Knudsen to be delivered rail freight.

"2. Terms quoted are ½ of 1% 10 days, net 30 on receipt of material.

"3. (2) warehouse buildings and (2) Carpenter shops are the first buildings to be shipped. Each building should be marked for identification by color code or some other method that they can be easily separated at time of unloading to get to the proper jobsite.

"4. Since our Builder, Wieman and Slechta of Omaha is responsible for the erection through a contract with Morrison and Knudsen, they should be copied on all transmittals, shipping lists, routing and any other information pertinent to the movement of the shipment and should. be sent a separate copy of all drawings.

Everett Slechta is the person who will be representing Wieman and Slechta.

"5. Sketches and a priority list are to be mailed to me by Mr. Larry Swanson of Morrison-Knudsen and Associates, P.O. Box 683, Grand Forks, North Dakota.

"6. Attached is a map showing actual missile sites.

"7. Piggy back ramps and rail sidings are available as follows:

Par Site—Hensel Siding

Msr Site—Necoma (sic) Siding

"8. Sketches for balance of buildings and priority attached."

Pascoe immediately commenced fabrication of the buildings and the preparation of shop drawings.

On April 28th Pascoe received a purchase order for the buildings from Morrison-Knudsen, dated April 15th, which provided, in part, that:

"The Seller acknowledges that time is the essence of Buyer's contract with the Corps of Engineers and is aware of the completion requirements placed upon Wieman Slechta Company in its agreement with Buyer.

"Seller acknowledges that Buyer has entered into a contract with Wieman Slechta Company of Omaha, Nebraska, whereunder Wieman will, as agent for Buyer, receive and erect in place, all buildings ordered hereunder. Seller agrees with this arrangement and will closely coordinate with Wieman Slechta Company to assure that an adequate flow of building materials is on hand at the job site at all times to allow Wieman to satisfactorily comply with the terms of its contract with Buyer. Seller agrees to receive shipping orders from Wieman and to ship such orders in accordance with the quantities, sizes, specifications and delivery times set forth therein.

\* \* \* \* \* \*

"Delivery—Items 1 and 5, shipment 4–27–70, or before. Balance of building to be shipped in their entirety

May 4, 1970, or before. Sequence of delivery Items 1 and 5, Items 3–4–8–9–6–7–2 Terms ½ of 1%—10 days, Net 30 days on receipt of material."

A copy of the contract between Wieman-Slechta and Morrison-Knudsen did not accompany the purchase order nor was Wieman-Slechta furnished a copy of the purchase order.

On April 29, 1970, after a meeting with Morrison-Knudsen representatives in Grand Forks on the 24th and a telephone conversation with them on the 28th, Mr. McCarthy wrote a letter to Morrison-Knudsen's purchasing agent in which delivery date of the steel buildings was changed to a shipping schedule. The letter relating thereto reads as follows:

"The second item was shipping schedule and if you will recall I told you in Grand Forks I heard second hand about deliveries and would advise you as to the actual schedule. This I gave you over the phone today and told you I would confirm this. The following is the shipping schedule and sequence that is to be followed:

Items 1 and 5 scheduled shipment for week ending 5/8/70.

Items 2, 3, 4, 6 and 7 scheduled shipment for week ending 5/15/70.

Items 8 and 9 scheduled shipment for week ending 5/22/70."

Neither Morrison-Knudsen nor Pascoe notified Wieman-Slechta of the changed shipping schedule.

On May 1st, in a letter to Morrison-Knudsen's purchasing agent, Pascoe's contract administrator again confirmed the revised shipping schedule as contained in Mr. McCarthy's letter, stated that shipment of the first buildings was on schedule and they would be shipped the following week, and acknowledged that time was of the essence but denied being aware of the completion requirements placed upon Wieman-Slechta by Morrison-Knudsen.

By May 6th Wieman-Slechta was informed that Pascoe was shipping the buildings by rail freight and wired Pascoe that:

"Shipment of metal buildings except by trailer is not authorized. Trailer service is available. Your organization will be responsible for drayage if shipment made by other methods."

On May 7th, after a telephone conversation the previous evening, Pascoe's contract administrator wrote Morrison-Knudsen's resident manager that their quotation covering the cost of shipment was rail freight, not TOFC, the latter being considerably more expensive, but that they were shipping the first four buildings TOFC, collect, to Morrison-Knudsen in care of Wieman-Slechta, Hensel, North Dakota. On the same date Morrison-Knudsen prepared a change order to Pascoe setting forth site designations for the buildings shipped TOFC, FOB vendor's plant, Columbus, Georgia. The shipping schedule was again set forth as being:

"Items 1 and 5—shipment week ending May 8, 1970, or before. Items 2, 3, 4, 6 and 7 shipment week ending May 15, or before. Items 8 and 9 shipment week ending May 22, or before.

"All other terms and conditions of the original order to remain the same and to apply hereto."

On May 8th Pascoe informed Mr. Wieman that to separate the four buildings covered by items 1 and 5 would require four trailers and that to save freight the panels for all four buildings would be loaded on one trailer and the remainder of the component parts of item 1 (two warehouses) and item 5 (two carpenter shops) on one trailer each. When Mr. Slechta became aware of this arrangement he contacted Pascoe's contract administrator to remind him that load restrictions were in effect due to thawing conditions in the area and that the North Dakota Highway Department would not permit movement of trailers which exceeded 30,000 pounds in weight.

On May 16th Morrison-Knudsen sent Pascoe's contract administrator a copy of their contract with Wieman-Slechta and stated, "We see nothing objectionable about requiring your awareness of that agreement as provided in your purchase order."

Of the first four buildings to be erected, two were shipped on May 12th and arrived at the sites June 1st and 2nd (item 1); the last two were shipped on May 25th and arrived June 8th and 13th (item 5). The remaining buildings were shipped and received as follows:

Item 2 (two change houses) shipped May 12th, arrived June 1st and 2nd;

Item 3 (one machine shop) shipped May 5th, arrived June 13th;

Item 4 (one machine shop) shipped May 25th, arrived June 8th;

Item 6 (one mechanical shop) shipped May 25th, arrived June 13th;

Item 7 (one machine shop) shipped May 25th, arrived June 8th;

Item 8 (two electrical shops) shipped May 26th and 28th, arrived June 10th and 23rd;

Item 9 (two fabrication shops) shipped May 26th and 28th, arrived June 10th and 23rd.

Wieman Slechta commenced erection of item 1 immediately upon their arrival.[2] This was also true of items 4 and 7. However, when item 5 arrived, a priority item, work on 4 and 7 ceased until item 5 could be completed.

On June 24th Wieman-Slechta, unaware of the changed shipping schedule agreed to by Morrison-Knudsen and Pascoe, wrote to Morrison-Knudsen concerning the late delivery of the buildings as follows:

"At the time we submitted Morrison-Knudsen a bid proposal on the above mentioned project, Pascoe Steel promised both our companies the buildings would be on the job May 15, 1970.

"Morrison-Knudsen issued a purchase order for the buildings direct with Pascoe, however, you are still holding Wieman-Slechta Co. responsible for delivery as in Contract Article XXI Item 1. Did you stipulate a delivery date in your purchase order to Pascoe?

"Now we are incurring heavy extra costs in making up the two weeks the buildings were late and I feel Pascoe should help pay some of this cost, as they did not fulfill their order as promised so we could make our completion date. The problem is if we had issued Pascoe a purchase order we would have had a delivery date stated and thus had something to go against them with.

"What we are requesting is that Morrison-Knudsen Co. hold payment in the amount of $20,000.00 from Pascoe until we settle with them. We feel this is justifiable as you are holding us responsible for delivery of the buildings."

Subsequent to the completion of its contract Wieman-Slechta for the first time became aware of the change order of May 7th, in which Morrison-Knudsen referred to Pascoe's shipping schedule, and asserted against Morrison-Knudsen

---

2. On May 5th Wieman-Slechta had subcontracted to C. G. Welding Co. for the furnishing of all labor for erection of the 14 metal buildings, including insulation and sheet metal and accessories, at a price of $37,000. This contract did not contain either a commencement or completion date, but C. G. Welding was aware that Wieman-Slechta was required to have the buildings completed by June 15th and had been told by Mr. Wieman that Pascoe had promised the component parts of the buildings would begin arriving on the sites the first week of May.

From telephone conversations with Pascoe the first week in May Wieman-Slechta learned that the component parts for the first buildings to be erected were just being loaded and so then informed C. G. Welding that they would arrive by May 15th. C. G. Welding arrived on the sites with men and equipment May 13th. When the first shipments had not arrived by May 22nd, Wieman-Slechta agreed to relieve C. G. Welding of any obligations it might have under their contract.

a claim for the extra costs incurred due to the late arrival of the buildings. Conceding it was partially responsible, this claim was settled for the sum of $15,000.00, Wieman-Slechta reserving its right to proceed against Pascoe. This action followed.

The evidence clearly establishes that Morrison-Knudsen would not have purchased the buildings from Pascoe if Wieman-Slechta had decided not to enter into a contract for erection of the buildings and for the furnishing of the necessary foundations and slabs, and it is equally clear that it was only after repeated assurances by Pascoe's regional sales manager that the component parts of the buildings would begin arriving at the sites the first week in May that Wieman-Slechta signed its contract with Morrison-Knudsen.

As the buildings failed to arrive within the time and in the order that Pascoe had promised, Wieman-Slechta encountered all the anticipated difficulties which had been discussed with Pascoe's regional sales manager prior to submitting their bid and, in addition, were compelled to work around and over Morrison-Knudsen's men, equipment and material. Cranes had to be rented and, to expedite the work, additional steelworkers employed. All the buildings were finally completed in late July at a total erection cost of $110,449.71 far in excess of Wieman-Slechta's anticipated cost of $40,000.00, Pascoe's estimate of $45,000.-00 and C. G. Welding's subcontract of $37,000.00.

As a proximate result of the buildings arriving late, over a period of 23 days rather than within a one-week period and not in the sequence as promised by Pascoe, Wieman-Slechta incurred increased costs for wages, union benefits, workmen's compensation, unemployment and FICA taxes, subsistence pay, salaries for supervisory personnel, administrative overhead, and insurance, together with unanticipated crane rental.

Using Wieman-Slechta's figure of $40,000.00 as the reasonable cost for the erection of the steel buildings, damages in the sum of $70,449.71 were incurred. These damages have been allayed to some extent by the payment of $15,000.-00 by Morrison-Knudsen in settlement of any responsibility that it had relating to the late shipment of the component parts of the steel buildings. This leaves unsatisfied damages of $55,449.71 which are directly attributable to Pascoe's actions. Wieman-Slechta is entitled to judgment against Pascoe Steel in the amount of $55,449.71, together with interest provided by law and costs of this action to be fixed and set by the Clerk of this Court.